Gary L. PEACHEY

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 5, 2009.

Decided Aug. 13, 2009.

Philip M. Bricknell, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

No appearance entered on behalf of appellee.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), appeals from the October 29, 2008, order of the Court of Common Pleas of Centre County (trial court), which sustained the statutory appeal of Gary L. Peachey (Licensee) from DOT's recall of his operating privileges pursuant to section 1519(c) of the Vehicle Code, 75 Pa.C.S. § 1519(c) (relating to a determination of incompetency to drive for medical reasons). We affirm.

Following her medical examination of Licensee on September 9, 2008, Dr. Jessica Zingaretti submitted an Initial Reporting Form to DOT stating that Licensee suffers from a seizure disorder that affects his ability to operate a motor vehicle. (Initial Reporting Form, R.R. at 49a.) The form also indicated that Licensee experienced a temporal lobe seizure on September 8, 2008, that an electroencephalogram (EEG) on that date was abnormal and that Licensee had received a new prescription for anticonvulsant medication. (*Id.*)

By official notice dated October 14, 2008, DOT notified Licensee that, as mandated by section 1519(c) of the Vehicle Code, DOT was recalling Licensee's driving privilege indefinitely, effective November 4, 2008, based on information indicating that Licensee has a "Seizure Disorder condition which prevents [him] from safely operating a motor vehicle." (R.R. at 47a.) The notice also informed Licensee that, because he has a seizure disorder, his driving privilege could be restored only after he had remained seizure-free for a six-month period, with or without medication, following his reported September 8, 2008, seizure.[1] 67 Pa.Code § 83.4. (R.R. at 47a.)

In response to Licensee's request for information regarding the restoration of

1. Section 1519(c) of the Vehicle Code provides as follows.

   **(c) Recall or suspension of operating privilege.**—The department shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the department *in accordance with regulations* to establish that such person is competent to drive a motor vehicle. The department shall suspend the operating privilege of any person who refuses or fails to comply with the requirements of this section until that person does comply and that person's competency to drive is established. Any person aggrieved by recall or suspension of the operating privilege may appeal in the manner provided in section 1550. *The judicial review shall be limited to whether the person is competent to drive in accordance with the*

his driving privilege, DOT provided Licensee with a Convulsive Disorder Reporting Form to be completed by Licensee's health care provider and returned to DOT. (R.R. at 46a, 56a.) Dr. Kevin Parry, a neurologist treating Licensee, completed the form, which contained nine questions related to Licensee's condition. The first three questions, respectively, asked whether the patient has been diagnosed as having a seizure disorder, whether the patient had an EEG indicative of seizure pattern and whether the patient is being treated with medication; in each case, Dr. Parry responded "yes." The ninth question asked whether the patient has been diagnosed with episodes of loss of consciousness or awareness that would interfere with his safe operation of an automobile, to which Dr. Parry responded "no."[2] (Convulsive Disorder Reporting Form, R.R. at 56a.)

On October 27, 2008, Licensee filed a timely statutory appeal of his license re-

call, and the trial court held a *de novo* hearing on the matter on October 29, 2008. At the hearing, DOT introduced the Initial Reporting Form and the Convulsive Disorder Reporting Form into evidence, thereby establishing that Licensee has a seizure disorder and suffered a seizure on September 8, 2008. Counsel maintained that those documents established Licensee's incompetency to drive and that the applicable statute and regulation dictate the recall of Licensee's operating privilege until a licensed physician reports to DOT on or after March 8, 2009, that Licensee has not had another seizure.

Thereafter, Dr. Parry testified on Licensee's behalf. On direct examination, Dr. Parry stated that Licensee came under his care on September 8, 2008, at which time he restricted Licensee from driving for two months. (R.R. at 27a–28a.) When asked whether it now would be safe for Licensee to drive, Dr. Parry opined, "I

*provisions of the regulations promulgated under section 1517 (relating to Medical Advisory Board).*

75 Pa.C.S. § 1519(c) (emphasis added). The regulation at 67 Pa.Code § 83.4 addresses seizure disorders and states, in relevant part, as follows.

(a) General. *A person who has a seizure disorder will not be qualified to drive unless a licensed physician reports that the person has been free from seizure for at least 6 months immediately preceding, with or without medication.* A person will not be disqualified if the person has experienced only auras during that period.

(b) Waiver. Waiver of the freedom from seizure requirement may be made upon specific recommendation by a licensed physician if one of the following conditions apply:

(1) A strictly nocturnal pattern of seizures or a pattern of seizures occurring only immediately upon awakening has been established over a period of at least 2 years immediately preceding, with or without medication.

(2) A specific prolonged aura accompanied by sufficient warning has been established over a period of at least 2 years immediately preceding, with or without medication.
(3) The person previously had been free from seizure for a 6 month period and the subsequent seizure or seizures occurred as a result of a prescribed change in or removal from medication while under the supervision of a licensed physician. This waiver will only be provided upon reinstitution of previous medication.
(4) The person previously had been free from seizure for 6 months and the subsequent seizure or seizures occurred during or concurrent with a nonrecurring transient illness, toxic ingestion, or metabolic imbalance.
67 Pa.Code §§ 83.4(a) and (b) (emphasis added).

2. The remaining five questions specifically address the exceptions to the regulation's mandatory six-month recall period, and Dr. Parry's answers indicated that Licensee did not fall within any of the exceptions. (Convulsive Disorder Reporting Form, R.R. at 56a.)

think it would probably be safe, it's always a judgment call with these things, but I think he probably could drive at this point." (R.R. at 27a.) Dr. Parry did not dispute that Licensee had a seizure in September, and he noted that Licensee probably had suffered a seizure two years earlier, but Dr. Parry explained that "he looks fine, he's a responsible guy and I think he can probably drive safely." (R.R. at 28a.)

On cross-examination, counsel for DOT questioned Dr. Parry regarding the likelihood that a person who has suffered a seizure will have a subsequent seizure. Referencing studies done on that topic approximately twenty-five years earlier, Dr. Parry testified that the probability of having another seizure declined to around twenty or twenty-five percent after two months and dropped to around two percent after six months. (R.R. at 30a.) The trial court then requested that Dr. Parry address the regulation's mandatory six-month waiting period. Although Dr. Parry did not reject the rule entirely, he explained that, because of Licensee's particular history and medication, he would not apply it to Licensee.[3] (R.R. at 33a.)

Following Dr. Parry's testimony, counsel for Licensee cited *Department of Transportation, Bureau of Driver Licensing v. Clayton,* 546 Pa. 342, 684 A.2d 1060 (1996), for the proposition that the court was not bound by the six-month minimum recall period set forth in 67 Pa.Code § 83.4. (R.R. at 37a–39a.) At the conclusion of the hearing, the trial court sustained Licensee's appeal based on Dr. Parry's medical testimony.

■ In its subsequent opinion, the trial court explained that it was "convinced by Dr. Parry's medical opinion that [Licensee's] condition was such that he did not pose a significant risk of suffering a future seizure and therefore was competent to drive." (Trial ct. op. at 2, R.R. at 68a.) The trial court acknowledged that the relevant regulation requires a person to remain seizure-free for a period of six months before becoming eligible for reinstatement of the driving privilege. Nevertheless, the trial court indicated that it was unwilling to treat Dr. Parry's first hand medical testimony as superfluous or allow Licensee's appeal to become a meaningless formality. DOT now appeals to this court.[4]

---

3. Dr. Parry testified as follows.

   If he was having frequent seizures prior to the diagnosis, I think I probably would have been more stringent about holding to the six months rule. On the other hand this is a guy that had one seizure and two years ago probably had another one, so I'm trying to do the best for him and I don't want to put him at risk, but on the other hand he's got a living to make, so that's where the judgment comes in . . . .

   (R.R. at 33a.) Dr. Parry further indicated that, in addition to considering Licensee's history, he made his judgment based on the fact that the anti-seizure medicine prescribed to Licensee "is a good drug and it usually works." (R.R. at 35a.)

4. Where, as here, the trial court takes *de novo* evidence, our scope of review is limited to determining whether constitutional rights were violated or whether the court manifestly abused its discretion or committed an error of law. *Sklar v. Department of Transportation, Bureau of Driver Licensing,* 764 A.2d 632 (Pa. Cmwlth.1999), *appeal denied,* 561 Pa. 681, 749 A.2d 474 (2000), *cert. denied,* 531 U.S. 823, 121 S.Ct. 67, 148 L.Ed.2d 32 (2000). We address only those issues properly raised by DOT in this appeal. In this regard, we note that, in the argument portion of its brief, DOT notes that Dr. Parry qualified his opinion by using words such as "probably" and "usually;" however, DOT does not assert that Dr. Parry's testimony is equivocal as a matter of law. Moreover, in its Statement of the Questions Involved, DOT does not include a challenge to the sufficiency or competency of Dr. Parry's testimony.

DOT argues that the trial court exceeded its scope of review and impermissibly created its own policy regarding the restoration of driving privileges. DOT points out that, pursuant to the explicit statutory language, judicial review of a recall of driving privileges under section 1519(c) of the Vehicle Code is "limited to whether the person is competent to drive *in accordance with the provisions of the regulations* promulgated under section 1517 (relating to Medical Advisory Board)." 75 Pa.C.S. § 1519(c) (emphasis added). Because the relevant regulation in this case, 67 Pa. Code § 83.4, allows for restoration of driving privileges only after the licensee is seizure-free for six months, DOT maintains that the trial court clearly erred by sustaining Licensee's appeal based on Dr. Parry's medical opinion that Licensee was competent to drive only two months after his September 8, 2008, seizure. DOT further asserts that the regulation governing the recall of driving privileges for individuals with a heightened risk of seizure is constitutional because it is rationally related to a legitimate state interest. We disagree.

The issues that DOT raises in this appeal were thoroughly addressed and rejected by our supreme court in *Clayton.* In that case, the licensee suffered a grand mal epileptic seizure, and his treating physician provided DOT with a convulsive disorder form indicating that the licensee had the seizure, was being treated with daily medication and was competent to drive a motor vehicle. After receiving the report, DOT recalled the licensee's operating privilege pursuant to 75 Pa.C.S. § 1519(c) and 67 Pa.Code § 83.4. At the time, 67 Pa. Code § 83.4 provided for the recall of a person's driving privilege for a period of one year following an epileptic seizure irrespective of whether that person's treating physician had determined that the licensee was competent to drive a vehicle. On appeal, the licensee argued that the regulation's mandatory minimum one-year suspension violated due process. The trial court agreed and sustained the licensee's appeal; this court affirmed.

▆▆▆ On further appeal, our supreme court also affirmed, holding that the regulation at issue created an impermissible irrebuttable presumption. In so holding, the court observed that a person who suffered a single seizure is presumed to be incompetent to drive for at least one year following that seizure, and, under the regulation, any medical evidence offered to rebut that presumption would be irrelevant, at least with the respect to the one-year recall. After stressing that procedural due process must be met before one's operating privilege can be revoked or recalled, the court in *Clayton* identified the essence of due process as a requirement for a meaningful hearing.[5] The court then

---

We also are aware that more than six months have passed since Licensee's September 8, 2008, seizure, and, therefore, restoration of Licensee's driving privileges would be unaffected by a decision of this court in DOT's favor. DOT nevertheless seeks our review of this matter in order to clarify the weight that courts must give the statutes and regulations governing medical recalls for seizure disorders.

5. The court stated as follows.
   Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or a "privilege."

pointedly noted that when a hearing excludes consideration of an element essential to the decision of whether a license shall be recalled, it does not meet that standard.[6] The court recognized the interest of DOT in protecting the physical well being of the public but determined that this was outweighed by a licensee's interest in his or her operating privilege, especially in light of the minimal burden to DOT in litigating such competency issues.

DOT first attempts to distinguish *Clayton* by pointing out that the licensee in *Clayton* had suffered only a single seizure, whereas Licensee here apparently had two seizures. However, in *Clayton*, our supreme court's analysis did not focus on the licensee's physical condition but, rather, on his inability to prove his competency to drive notwithstanding his medical condition.[7]

DOT also maintains that, in this case, Licensee was afforded adequate due process by virtue of his ability to appeal the recall and present medical evidence at a hearing concerning his competency to drive. (DOT's brief at 18.) However, in light of DOT's insistence that courts may not consider such evidence, we are puzzled by DOT's assertion that these proceedings afforded Licensee due process.

Finally, DOT contends that the six-month, seizure-free requirement for those diagnosed with seizure disorders does not create an irrebuttable presumption but, instead, creates a classification of high-risk drivers. Noting that driving is a privilege, not a right, DOT argues that legislation regarding that privilege must be analyzed under the rational relationship test, and DOT contends that because the six-month

---

*Clayton*, 546 Pa. at 351, 684 A.2d at 1064 (quoting *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)).

> While procedural due process is a flexible notion which calls for such protections as demanded by the individual situation, the essential requisites are notice and meaningful opportunity to be heard. Due process requires not just *"any"* hearing, but rather an *"appropriate"* hearing.

*Clayton*, 546 Pa. at 351, 684 A.2d at 1064 (emphasis in original, citations omitted).

6. In this regard, our supreme court stated

> As noted above, the Department submits that procedural due process was, indeed, satisfied in the instant matter insofar as Appellee had a right to a *de novo* hearing before the court of common pleas regarding the recall of his license at which hearing he could have presented evidence to rebut the fact that he had a seizure. However, given the nature of the matter currently before the courts, it cannot be gainsaid that any "meaningful" opportunity to be heard would here require that the licensee be permitted to present objections, not to the conclusion that he had suffered an epileptic seizure, but rather to the presumption of incompetency to drive. While Appellee indeed had a forum in which to assert his

> claim that he was competent to drive, that forum was rendered meaningless as a result of the irrebuttable presumption of § 83.4(a) since under that regulation, the recall of Appellee's license was a foregone conclusion. Such a meaningless hearing certainly does not comport with even the minimal standards afforded under due process.

*Clayton*, 546 Pa. at 352–53, 684 A.2d at 1065 (citation omitted).

7. We note that, when *Clayton* was decided, 67 Pa.Code § 83.4(a) provided that "[a] person suffering from epilepsy may not drive unless their personal licensed physician reports that the person has been free from seizure for a period of at least 1 year immediately preceding, with or without medication." *Clayton*, 546 Pa. at 345, 684 A.2d at 1061. That portion of the regulation now provides that "[a] person who has a seizure disorder will not be qualified to drive unless a licensed physician reports that the person has been free from seizure for at least 6 months immediately preceding, with or without medication." 67 Pa.Code § 83.4. DOT asserts that the subsequent amendments to the regulation governing seizure disorders satisfactorily address the due process concerns expressed by our supreme court in *Clayton*, but DOT does not explain or elaborate upon this assertion.

recall period mandated by 67 Pa.Code § 83.4 is rationally related to the state's interest in traffic safety, it satisfies constitutional requirements. (DOT's brief at 18.) We note that our supreme court specifically dismissed this argument in *Clayton,* concluding as follows.

> The real thrust of the Department's argument is that because the Medical Advisory Board has deemed persons who have suffered even one epileptic seizure unsafe to drive, that determination should remain inviolate. Clearly, precluding unsafe drivers, even those who are potentially unsafe drivers, from driving on our highways is an important interest. But, it is not an interest which outweighs a person's interest in retaining his or her license so as to justify the recall of that license without first affording the licensee the process to which he is due. Indeed, since competency to drive is the paramount factor behind the instant regulations, any hearing which eliminates consideration of that very factor is violative of procedural due process.

*Clayton,* 546 Pa. at 353, 684 A.2d at 1065 (citations omitted).

Discerning no meaningful distinction between the circumstances here and those presented in *Clayton,* we conclude that *Clayton* is dispositive, and, accordingly, we affirm.

#### ORDER

AND NOW, this 13th day of August, 2009, the order of the Court of Common Pleas of Centre County, dated October 29, 2008, is hereby affirmed.

CONCURRING OPINION BY President Judge LEADBETTER.

I concur in the result reached by the majority. Although I do not believe that Dr. Parry's testimony was sufficient to

overcome the presumption contained in 67 Pa.Code that one is not qualified to drive within six months following a seizure, I agree with the majority that this issue has not been raised by DOT and, therefore, is waived.